UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**KATHRYN FREIX,**

Plaintiff,

v. **No. 4:25-cv-01060-P**

**CITY OF FORT WORTH,**

Defendant.

## OPINION & ORDER

Before the Court is Defendant City of Fort Worth's (the "City") Motion for Summary Judgment ("Motion"). ECF No. 16. Having considered the Motion, applicable law, and relevant docket filings, the Court will **GRANT** the Motion.

## BACKGROUND

This case arises out of Plaintiff Kathryn Freix's employment with, and ultimate termination from, the City of Fort Worth Police Department ("FWPD"). Freix brought suit against the City claiming she suffered sex discrimination, harassment, and retaliation at the hands of FWPD.

Freix worked at FWPD for twenty-four years beginning in 2007 as a police officer. Despite receiving several promotions throughout her tenure, Freix's employment record with FWPD was spotty. Freix received numerous forms of discipline over the years. Pl. App. at 1–3. Central to this case, following an investigation into her conduct, Freix was placed on a sixteen-day suspension without pay for making untruthful statements. Def. App. at 14–16.

Specifically, FWPD initiated an investigation into Freix's actions for: (1) lying about a call to coworkers to report that she was running late for work; (2) writing an email to her lieutenant that falsely represented that she received permission from the Deputy Chief to train with a specific unit within FWPD (the Mounted Unit); and (3) falsely claiming

that she resolved a grievance with her supervisors. Pl. App. at 203–05. Following the investigation, the Chief of Police sustained the allegations relating to the untruthful email and grievance resolution, but not the phone call. Pl. App. at 244.

Freix and the Chief of Police held a pre-disciplinary meeting prior to Freix's suspension. In that meeting, Freix admitted that she misrepresented facts and could understand how allegations of untruthfulness against her could be sustained. Def. App. at 40; 11:49–12:02; 15:25–15:37. FWPD ultimately suspended Freix for untruthfulness in April 2024, stating that Freix's actions constituted a violation of departmental rules and policies and were not in line with the conduct expected of a Fort Worth Police Officer. Def. App. at 14–16.

Three months after Freix's sixteen-day suspension, Freix ranked first on the eligibility list for a promotion. But the Chief of Police bypassed Freix's promotion to lieutenant, pointing to the facts culminating in her April 2024 suspension. Def. App. at 33–34. The Chief reasoned that Freix failed to demonstrate the qualities needed to succeed in the rank of lieutenant. *Id.*

In response, Freix wrote a letter to the Civil Service Commission detailing why she believed the bypass of her promotion was improper. Def. App. at 48–50. Freix argued that the actual reason for her bypass was that she reported an incident of harassment by a male co-sergeant. *Id.* The letter also stated that she was never untruthful and that she was forced to accept under duress the sixteen-day suspension. *Id.*

After she sent the bypass letter, FWPD suspended Freix indefinitely in January 2025. Def. App. 52–55. The suspension letter stated that the statements made in Freix's bypass letter were "false, fictious, and/or misleading in nature." *Id.* Because of this, according to the Assistant Chief of Police, Freix showed a blatant disregard for the policies and procedures of FWPD. *Id.* Freix's indefinite suspension was upheld by a hearing examiner who concluded that her letter to the Civil Service Commission contained untrue statements in violation of the Civil Service Rules and Regulations. Def. App. 63–81.

Freix argues that the investigation resulting in her suspension, and ultimate termination, were pretextual. Freix claims that the investigation did not begin until she made a grievance regarding a Mounted Patrol sergeant position that was given to another (male) candidate. First Amended Complaint ("FAC") ¶¶ 12–13. Freix also points to a complaint she made stating that her female colleague had not been given adequate accommodations to pump her breasts. FAC ¶ 16. Freix further argues that, in the midst of the investigation, there were rumors circulating about her having sexual relations with a subordinate male officer under her command. FAC ¶ 24.

Plaintiff asserts three causes of action against the City under Title VII and Chapter 21 of the Texas Labor Code: Discrimination on the Basis of Sex (Count I), Sexual Harassment/Hostile Work Environment (Count II), and Retaliation for Engaging in Protected Activity (Count III).

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when it might affect the outcome of a case. *Id.* Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

When determining whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmovant. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). The Court need not sift through the record to find evidence in support of the nonmovant's opposition to summary judgment; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). When the movant does not carry the burden of proof for a legal claim, they may obtain summary judgment by showing an

absence of evidence on any essential element of the non-movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-movant must then identify evidence in the record that creates a genuine dispute of material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the non-movant fails to do so, the Court must grant the movant summary judgment for that claim. *Id.* at 1076.

## ANALYSIS

Defendant moves for summary judgment on seven different grounds. Because Plaintiff has not met her burden with respect to her three claims for relief, the Court focuses on those arguments.[1]

### A. Sex Discrimination

Plaintiff bears the burden of establishing a prima facie case of discrimination by showing she: (1) was a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was treated less favorably than "similarly situated" colleagues outside of her protected class. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Once a *prima facie* case is made, the burden shifts to the employer under the *McDonnell-Douglas* framework to offer a "legitimate, non-discriminatory" explanation for the adverse employment action. *Id.*; *see also Sacchetti v. Optiv Sec., Inc.*, 819 F. App'x 251, 253 (5th Cir. 2020) (courts "evaluate sex-discrimination claims under Texas state law and Title VII similarly.").

Plaintiff has failed to produce any evidence that she was treated less favorably than others "similarly situated" outside of her protected class. To satisfy the "similarly situated" prong, Plaintiff must identify a colleague outside of her protected class who was treated more favorably "under nearly identical circumstances." *Lee v. Kansas City Southern Ry.*

---

[1] While the Court narrows its focus, it agrees that several acts Plaintiff complains of are time-barred. A Title VII claimant is required to file a charge with the Equal Employment Opportunity Commission within 300 days of the alleged unlawful employment action. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110 (2002); *Janmeja v. Bd. of Supervisors of Louisiana State Univ.*, 96 F. App'x 212, 214 (5th Cir. 2004). Plaintiff filed her EEOC charge on August 26, 2024, and therefore any acts complained of occurring prior to October 31, 2023 are time-barred from consideration. 42 U.S.C. 2000e–5(e).

*Co.*, 574 F.3d 253, 259 (5th Cir. 2009). This comparator must hold the "same job" as Plaintiff, must share the "same supervisor" or have their "employment status determined by the same person," and must have a history of "violations" or "infringements" similar to Plaintiff. *Alkhawaldeh*, 851 F.3d at 426. "[C]ritically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Lee*, 574 F.3d at 260 (citation omitted). "Where different decision makers or supervisors are involved, their decisions are rarely 'similarly situated' in relevant ways for establishing a *prima facie* case." *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 736 (S.D. Tex. 2014) (citation omitted).

Plaintiff states, without any evidentiary support, that a male sergeant was promoted to lieutenant based off the same promotional exam that Plaintiff took, despite having recent disciplinary charges for making racial and misogynistic statements towards coworkers. Pl. Resp. at 26. Plaintiff also argues that she was treated differently than a male co-sergeant when her decision regarding one of the Patrol Bureau's vans was questioned. Pl. Resp. at 7. Again without support, Plaintiff also states that her less-senior male colleagues were chosen for acting lieutenant assignments instead of her. Pl. Resp. at 8. Apart from those specific instances, Plaintiff's response is riddled with broad assertions that her male colleagues were treated better than her.

Plaintiff has not met her burden. She has identified no evidence in the record regarding these "similarly situated" colleagues' position, rank, disciplinary record, or supervisors. In fact, Plaintiff indicates that it was different lieutenants who made decisions regarding assignments, meaning their decisions could not have been "similarly situated." *Agoh*, 992 F. Supp. 2d at 736. Nor has Plaintiff—other than by stating that one colleague had *some* disciplinary history—shown that their past "violations" or "infringements" were similar whatsoever to hers. *Alkhawaldeh*, 851 F.3d at 426. Plaintiff's unique disciplinary record and performance history make a comparison with the colleagues she identified ill-suited to constitute a "similarly situated" comparator. Moreover, Plaintiff has not even attempted to argue that the "conduct

that drew the adverse employment decision," or Plaintiff's making untruthful statements, was "nearly identical" to the comparators she identified. *Lee*, 574 F.3d at 260. Because Plaintiff has offered no evidence that she was treated worse than a male colleague in "nearly identical circumstances," she has not established a *prima facie* case of sex discrimination.

Even if Plaintiff could establish a *prima facie* case of sex discrimination, Defendant has produced evidence supporting a valid, non-discriminatory basis for her discipline. *See Lee*, 574 F.3d at 259. Plaintiff was suspended (more than once) because she made untruthful statements (more than once). Def. App. 14–16; 52–55. Plaintiff has not identified evidence supporting her argument that she was disciplined because she was a woman. Instead, the record reflects a history of Plaintiff making dishonest statements and skirting the chain of command, which ultimately led her supervisors to discipline her. Sex discrimination is not borne out in the record.

Because Plaintiff has not identified evidence creating a genuine dispute of material fact on this claim, Defendant is entitled to summary judgment on Count I.

### B. Sex Harassment/Hostile Work Environment

To establish a hostile work environment claim, Plaintiff must show: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action. *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). *See Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 646 (Tex. App. 2015) (applying same criteria under Texas law). "Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." *Shepherd v. Comptroller of Pub. Accts. of State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999) (quoting *Weller v. Citation Oil & Gas Crop.*, 84 F.3d 191, 194 (5th Cir. 1996)). The challenged conduct must be so offensive that it creates

an objectively "hostile" or "abusive" work environment. *Id.* "Whether an environment is 'hostile' or 'abusive' is determined by looking at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Id.* Teasing, offhand comments, and isolated incidents will not amount to a hostile work environment. *Id.*

Defendant argues that Plaintiff cannot establish the fourth element because she has identified no credible evidence that the alleged harassment was severe or pervasive enough to create an objectively hostile or abusive work environment. Mot. at 19. The Court agrees.

In support of her hostile work environment claim, Plaintiff points solely to rumors that were circulating about her. Pl. Resp. at 27. Specifically, Plaintiff testified that she was aware only of a single rumor that she was in a sexual relationship with a subordinate officer. Def. App. at 96–97. She alluded to another rumor about her stalking someone. *Id.* Plaintiff argues, without evidentiary support, that because she was the only female and her subordinates were male, the rumors were "humiliating" and made it "difficult to command the respect of her subordinates." Pl. Resp. at 27.

Plaintiff has not identified evidence in the record showing that these "rumors" were so "severe and pervasive" that they rendered her unable to succeed in the workplace. Instead, Plaintiff points to one or two rumors that offended her. Such isolated incidents cannot form the basis of a hostile work environment claim. *Shepherd*, 168 F.3d at 874. Plaintiff has not established—or even attempted to argue—that these rumors were frequent, severe, or physically threatening or humiliating. *Id.* The single case Plaintiff cites in support of her argument, an unpublished Third Circuit opinion, involved a plaintiff encountering incidents amounting to harassment at least once every other week on average. *Cuff v. Department of Corrections*, No. 23-3246, 2025 WL 1442706, at *6 (3rd Cir. 2025). Unlike that case, Plaintiff has provided no support that the handful of isolated rumors about her were so frequent that they altered the conditions of her employment. *See Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 618 (5th Cir. 2020) (sexual rumors did not alter the

conditions of employment); *Jackson v. Texas A&M Univ.*, 116 F.3d 1477 (5th Cir. 1997) (same). A conclusory statement that it became difficult to command the respect of her subordinates cannot carry Plaintiff's burden to establish that these rumors unreasonably interfered with her work performance.

Because Plaintiff has not provided evidence establishing that the alleged harassment was so severe as to affect the conditions of her employment, she has not established a *prima facie* claim of a hostile work environment. Defendant is entitled to summary judgment on Count II.

**C. Retaliation**

Plaintiff must establish a *prima facie* case of retaliation by showing: (1) she participated in a protected activity; (2) she suffered an adverse employment action by her employer; and (3) there is a causal connection between the protected activity and the adverse action. *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). *See Donaldson v. Texas Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 441 (Tex. App. 2016) (applying same criteria under TCHRA). The burden then shifts to Defendant to provide a "legitimate, nonretaliatory reason for the adverse employment action." *Cooper v. Dallas Police Ass'n*, 278 F. App'x 318, 320 (5th Cir. 2008) (citation omitted). If Defendant does so, Plaintiff then must show that the given reason is a pretext for retaliation. *Id.* This requires Plaintiff to show that the adverse action would not have occurred "but for" the employer's retaliatory motive. *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).

Plaintiff points to three acts that she argues were "protected activity": complaining to a lieutenant that she believed she was being treated differently because she was a female (on July 28, 2023) (Pl. Resp. at 23; Pl. App. 33–38); filing a grievance about not being assigned to the Mounted Unit because she was female (on September 6, 2023) (Pl. Resp. at 9, 23; FAC ¶ 13); and complaining that she believed another female officer's pregnancy rights were violated (on September 21, 2023) (Pl.

Resp. 24; Pl. App. 153–155).[2] Each of these acts occurred after the 300-day time frame required to file a Title VII claim and are time–barred from consideration. *See supra* note 1; *Morgan,* 536 U.S. at 110. Because she cannot show that participated in "protected activity," Plaintiff cannot establish a *prima facie* case of retaliation.

Even assuming she could, Defendants have provided a "legitimate, nonretaliatory reason for the adverse employment action." *Cooper v. Dallas Police Ass'n*, 278 F. App'x at 320 (citation omitted). Again, the record is replete with evidence that Plaintiff was investigated, and ultimately suspended, because she made multiple untruthful statements. Def. App. at 14–16 (16-day suspension due to untruthfulness); Def. App. at 52–55 (permanent suspension due to untruthfulness); Def. App. at 77–81 (hearing examiner sustaining untruthfulness allegations); Pl. App. at 158 (Deputy's sworn report stating an investigation was initiated due to allegations of untruthfulness); Pl. App. at 180 (Plaintiff placed on restricted duty due to allegations of untruthfulness); Pl. App. at 199 (forty-five page investigation into allegations of untruthfulness); Pl. App. at 244–47 (Assistant Chief affirming untruthfulness allegations relating to email and IOC).

Plaintiff has pointed to nothing in the record–beyond making unsupported, conclusory assertions–showing that Defendant's conduct was pretextual. Without citing to any record evidence, Plaintiff states that "Defendant's conclusion that Plaintiff was 'Untruthful' in the first IA investigation is false and a pretext for discrimination." Pl. Resp. at 25. She vaguely states that statements made by three individuals "leave no doubt" that Plaintiff did not make knowingly untruthful statements.

---

[2] Plaintiff's later suggestion that her 2024 human resources complaint and EEOC charge were protected activities are negated by Plaintiff's argument that the "adverse employment action" she suffered was when she was placed on restricted duty in December 2023. Pl. Resp. at 24. It is necessarily true for purposes of a Title VII claim that an adverse employment action occurred *because of* protected activity. *See Ellerbrook v. City of Lubbock, Tex.*, 465 F. App'x 324, 330–31 (5th Cir. 2012) (The "ultimate determination is whether, 'but for' the protected conduct, the employer would not have engaged in the adverse employment action.") (citing *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998)).

*Id.* Nonetheless, she does not say what those statements were or identify them in the record. Even so, this assertion is contradicted by the record, which includes an admission by Plaintiff that she made misrepresentations that could sustain a finding of untruthfulness. Def. App. at 040; 11:49–12:02; 15:25–15:37. The record reflects that multiple arbiters found Plaintiff to be untruthful, Plaintiff admitted she was untruthful, and Plaintiff was suspended because she was untruthful. Plaintiff has fallen far short of her burden of establishing that her protected activity was the but-for cause of Defendant's alleged retaliation.

Plaintiff cannot establish a *prima facie* case of retaliation, nor can she show that Defendant's reasons for investigating her conduct were pretextual. For these reasons, Plaintiff's claim for retaliation fails. Defendants are entitled to summary judgment on Count III.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's Motion and **ENTERS** summary judgment in favor of Defendant on all counts. This case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED** on this **20th day of October 2026.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE